UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JULIO PINA,

       Plaintiff,

  -against-

DORA HOMES, INC., MAGUIRE AVENUE
REALTY CORP. and OVAS BUILDING CORP.,

       Defendants.
------------------------------------------------------------------x
DORA HOMES, INC., MAGUIRE AVENUE
REALTY CORP. and OVAS BUILDING CORP.,

       Third-Party Plaintiffs,

  -against-

CHORAY CONSTRUCTION CORP., TRUMAN
EUGENIO ULLOA ARCE a/k/a ESRAEL
CAMPOS, OSCAR ABAD, UTICA FIRST
INSURANCE COMPANY and INFINITY
FRAMING CONSTRUCTION CORP.,

       Third-Party Defendants.
------------------------------------------------------------------x
CHORAY CONSTRUCTION CORP. and OSCAR
ABAD,

       Third-Party Plaintiffs,

  -against-

INFINITY FRAMING CONSTRUCTION CORP.,
BOSQUES CONSTRUCTION, EUGENIO ULLOA
and ANDRES BOSQUES,

       Third-Party
Defendants.
-----------------------------------------------
----------------------x

**MEMORANDUM AND ORDER**
Case No. 09-CV-1626 (FB) (JMA)

*Appearances*:

*For Julio Pina*:
RICHARD M. WINOGRAD, ESQ.
STUART L. KITCHNER, ESQ.
THAILARY LIM, ESQ.
Ginarte, O'Dwyer, Gonzalez, Gallardo & Winograd, LLP
225 Broadway, 13th Floor
New York, New York 10007

*For Choray Construction Corp. and Oscar Abad:*
LEIGH HARRIS SUTTON, ESQ.
ATHANASIA APOSTOLAKOS, ESQ.
Morris Duffy Alonso & Faley
2 Rector Street, 22nd Floor
New York, New York 10006

*For Dora Homes, Inc., Maguire Avenue Realty Corp. and Ovas Building Corp.:*
HOWARD M. FILE, ESQ.
260 Christopher Lane, Suite 102
Staten Island, New York 10314

**BLOCK, Senior District Judge:**

Julio Pina was injured while working on a construction project in Staten Island. Invoking New York common-law and statutory law, he seeks monetary damages from the owner of the site, Ovas Building Corp. ("Ovas"), and the general contractors of the construction, Dora Homes, Inc. ("Dora") and Maguire Avenue Realty Corp. ("Maguire"). Jurisdiction is premised on diversity.

Ovas, Dora and Maguire (collectively, "Defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56. They argue that Pina has failed

2

to offer sufficient evidence to establish their liability. In the alternative, they argue that liability is barred by the exclusivity provision of New York's Workers' Compensation Law. Finally, they argue that if they are liable to Pina, they are entitled, as a matter of law, to indemnification from Choray Construction Corp. ("Choray") and Oscar Abad.

For the following reasons, the motion is granted in part and denied in part.

I

**A. Factual Background**

The following facts are either undisputed or, if disputed, presented in the light most favorable to the non-moving party. *See Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 217 (2d Cir. 2006).

Defendants are all jointly owned by brothers Ottavio and Leonello Savo. They engaged Infinity Framing Construction Corp. ("Infinity") to do framing work for the project. They engaged Choray to provide sheeting work. Infinity's principal was Eugenio Ulloa; Choray's was Abad. Pina was employed by Infinity. He had heard of Choray, but had "never worked for that company." Dep. of Julio Pina 99.

As part of Infinity's subcontract, Ulloa executed a hold-harmless agreement requiring Infinity to indemnify Defendants for liability arising from the acts and omissions of Infinity's employees. Ulloa signed an analogous agreement on behalf of Choray.

The Savo brothers shared responsibility for general oversight of the work site. In that role, they checked the quality of the construction and monitored subcontractor compliance with safety regulations. According to Ottavio Savo, workers were required to wear a hard hat, safety glasses and construction shoes. If he or his brother saw workers

3

without that equipment, they would inform the relevant subcontractor's principal and stop work until they complied. Thus, when Ottavio saw Infinity workers using nail guns without safety glasses on one or two occasions, he warned Ulloa because "usually the subcontractor supplies the safety equipment to their workers." Dep. of Ottavio Savo 26.

At the work site, Pina reported to Ulloa. Each morning, Ulloa would assign Pina a task and give him the necessary equipment. According to Pina, Ulloa alone oversaw his work. *See* Dep. of Julio Pina 143-44 ("Q. Sir, did you ever see a supervisor from someone other than Infinity Framing overseeing the work from any of the workers at Infinity Framing prior to and including the date of your accident? A. No, never, only Eugenio Ulloa did it.").

On April 1, 2008, Ulloa instructed Pina and other workers to erect a wall for one of the houses being built on the site. He gave Pina a nail gun, but did not provide protective goggles.

Pina used the nail gun to join the two-by-fours forming the wall. At one point, Pina pulled the trigger, but no nail was released. Instead, the nail jammed in the muzzle of the gun, causing a second nail to fly out of the gun and strike Pina in the right eye. The impact ruptured Pina's cornea, an injury that required surgery and hospitalization, and left Pina unable to work for six months.

Two weeks prior to the accident, Pina had experienced a similar mishap with the same nail gun. A nail would jam in the muzzle, causing the next nail to fly out of the chamber. One such nail cut Pina's right ear. Pina reported the problem to Ulloa, who

4

assured Pina he would fix it.

Neither Ulloa nor the Savo brothers were in the immediate vicinity at the time of Pina's accident, but Leonello Savo arrived shortly afterwards. He told Pina that he would take him to the hospital, but wanted to talk to Ulloa first. Leonello then called Ulloa, who arrived approximately forty minutes later. Ulloa had a driver take Pino to his (Ulloa's) house. Eventually, Pina called a friend to take him home. From there, he went first to his doctor and then to a hospital. Ottavio Savo learned of the accident a week or two later, when Pina called to ask him to talk to Ulloa. Following up on that request, Ottavio told Ulloa to "get together with Julio Pina and see what he can do, just settle it." Dep. of Ottavio Savo at 36.

Ulloa initially agreed to pay Pina's medical bills, but did not follow through. To make matters worse, Ulloa did not maintain workers' compensation insurance. Thus, when Pina applied for workers' compensation benefits, the Workers' Compensation Board held Dora liable as general contractor. *See* N.Y. Workers' Comp. L. § 56 (making general contractor liable for workplace injuries to subcontractor's employees "unless the subcontractor primarily liable for such compensation . . . has secured compensation therefor[.]"). Dora's insurance carrier eventually paid Pina $53,500 in settlement of his workers' compensation claim.

**B. Procedural History**

While the worker's compensation claim was pending, Pina filed the present lawsuit. The suit has generated considerable third-party practice over who should ultimately be responsible for any liability to Pina. Defendants have asserted third-party

5

claims for indemnification against Infinity and Ulloa. They have made similar claims against Choray and Abad.[1] Choray and Abad, in turn, have asserted claims for indemnification against Infinity, Ulloa, Bosques Construction (another Ulloa-controlled entity) and one "Andres Bosques" (which may or may not be an alias used by Ulloa). Infinity, Ulloa, Bosques and Bosques Construction have all defaulted.

With respect to non-defaulting parties, the claims to be adjudicated are, as noted, Pina's claims against Defendants and Defendants' claim for indemnification from Choray and Abad. Part II addresses Defendants' motion for summary judgment as it pertains to Pina's claims against them. Part III addresses their motion with respect to their claims for indemnification.

## II

Pina's claims against Defendants are premised on common-law negligence, and on sections 200 and 241(6) of the New York Labor Law. Because Pina bears the burden of proof on those claims, Defendants' burden on their motion for summary judgment is to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The Court first addresses each of Pina's theories of liability. It then addresses Defendants' alternative argument that they are entitled to the protection of the exclusivity

---

[1] The defendants also made a third-party claim against Utica First Insurance Company for coverage under Choray's general liability policy. The Court previously held that none of the defendants was an additional insured under that policy and, accordingly, dismissed the coverage claim. *See Pina v. Dora Homes, Inc.*, No. 09-CV-1626, 2010 WL 2977409 (E.D.N.Y. Jul. 22, 2010).

provision of the New York Workers' Compensation Law.

**A. Section 200 and Negligence**

Section 200 provides that construction sites "shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places." The statute "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work." *Comes v. New York State Elec. & Gas Corp.*, 82 N.Y.2d 876, 877 (1993).

"An implicit precondition to this duty 'is that the party charged with that responsibility have the authority to control the activity bringing about the injury.'" *Id.* (quoting *Russin v. Louis N. Picciano & Son,* 54 N.Y.2d 311, 317 (1981)). Thus, "when a claim arises out of alleged defects or dangers in the methods or materials of the work, recovery against the owner or general contractor cannot be had under Labor Law § 200 unless it is shown that the party to be charged had the authority to supervise or control the performance of the work." *Ortega v. Puccia*, 866 N.Y.S.2d 323, 330 (2d Dep't 2008).[2] "A defendant has the authority to supervise or control the work for purposes of Labor Law § 200 when that defendant bears the responsibility for the manner in which the work is performed." *Id.*

---

[2] Where, by contrast, the injury was caused by the dangerous condition of the premises, the relevant inquiry is whether the owner or general contractor "either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident." *Ortega*, 866 N.Y.S.2d at 329. There is no dispute that Pina's injury relates to "the methods or materials of the work," and not to the condition of the premises.

By Pina's own admission, only Ulloa had the authority to direct the manner of his work. He argues that the Savo brothers maintained supervisory authority over the entire site, but "mere general supervisory authority at a worksite for the purpose of overseeing the progress of the work and inspecting the work product is insufficient to impose liability under Labor Law § 200." *Id.* That a defendant's supervisory authority includes inspecting for safety violations and stopping work if violations are found does not change the result. *See Capolino v. Judlau Contracting, Inc.*, 848 N.Y.S.2d 346, 349 (2d Dep't 2007) ("Contrary to the plaintiff's contention, the fact that one of the defendant's employees inspected the work site each day and was authorized to stop the work in the event that she observed any unsafe condition was insufficient to establish liability."). Nor does Ottavio Savo's apparent knowledge of workers using nail guns without safety equipment create liability. *See Comes*, 82 N.Y.2d at 878 ("[T]his Court has not . . . imposed liability under the statute solely because the owner had notice of the allegedly unsafe manner in which the work was performed.").

Because there is no evidence that Defendants controlled the manner in which Pina performed his work, they are not liable under section 200. And because section 200 codifies common-law duties, they are not liable on a theory of common-law negligence.

**B. Section 241(6)**

Section 241(6) of the New York Labor Law requires "[a]ll contractors and owners and their agents" to maintain "[a]ll areas in which construction, excavation or demolition work is being performed" so "as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places." The

8

duties imposed are nondelegable and, unlike the duties imposed by section 200, do not depend on the defendant's supervision or control over the work or the work site. *See St. Louis v. Town of N. Elba*, 16 N.Y.3d 411, 413 (2011).

Section 241(6) is not self-executing. Rather, "a plaintiff must set forth a violation of a specific rule or regulation promulgated pursuant to it." *Wilinski v. 334 E. 92nd Housing Dev. Fund Corp.*, 18 N.Y.3d 1, 11-12 (2011). Those rules and regulations are embodied in New York's Industrial Code, 12 N.Y. Comp. Codes R. & Regs, ch. I, subch. A, which is promulgated by the Commissioner of the Department of Labor. The New York Court of Appeals has drawn a distinction "between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards": "The former give rise to a nondelegable duty, while the latter do not." *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 505 (1993).

Pina proffers the following three sections of the New York Industrial Code as the bases for liability under section 241(6).

***a. Section 23-1.8(a)***

The Industrial Code requires that eye protection be provided for "all persons while employed in welding, burning or cutting operations or in chipping, cutting or grinding any material from which particles may fly, or while engaged in any other operation which may endanger the eyes." 12 N.Y. Comp. Codes R. & Regs. § 23-1.8(a). New York Courts have held that section 23-1.8(a) is sufficiently concrete to create a duty under section 241(6). *See Dennis v. City of New York*, 304 N.Y.S.2d 661, 663 (2d Dep't 2003); *Galawanji v. 40 Sutton Place Condo.*, 691 N.Y.S.2d 436, 427 (1st Dep't 1999). They have,

moreover, often held that whether a particular activity "may endanger the eyes" presents a question of fact precluding summary judgment. *See McCune v. Black River Constructors*, 639 N.Y.S.2d 203, 204 (4th Dep't 1996) (concrete drilling); *Cappiello v. Telehouse Int'l Corp.*, 597 N.Y.S.2d 393, 395 (1st Dep't 1993) (driving masonry nails); *Rapp v. Zandri Constr. Corp.*, 569 N.Y.S.2d 994, 997 (3d Dep't 1991) (using staple gun). Defendants offer two reasons why section 23-1.8(a) does not apply to this case, but neither is persuasive.

First, Defendants argue that use of a nail gun is not, as a matter of law, an "operation which may endanger the eyes." In support, they cite *Herman v. Lancaster Homes, Inc.*, 536 N.Y.S.2d 298 (4th Dep't 1988), in which the Fourth Department held that "hammering is not one of the activities listed in [section 23-1.8(a)]." *Id.* at 299. But *Herman* has been criticized for "giv[ing] virtually no weight" to the catch-all provision at the end of the section. *Cappiello*, 597 N.Y.S.2d at 395 (1st Dep't 1993). In any event, the foreseeability of the need for protective eyewear depends on the circumstances, *see id.*, and the dangers a nail gun present to the eyes are more apparent that the dangers of manual hammering.

Second, Defendants argue that the duty created by section 23-1.8(a) applies only to employers. This argument misreads *Herman* as standing for the proposition that "the responsibility to see that those regulations are carried out lies with employers." 536 N.Y.S.2d at 299. "[T]hose regulations," however, plainly refers to federal OSHA regulations, not section 23-1.8(a). *See id.* (citing 29 C.F.R. §§ 1910.1, 1910.5, 1910.12, 1910.133). As noted, control over the work is not a prerequisite to liability under section 241(6). *See St. Louis*, 16 N.Y.3d at 413. New York Courts have, on numerous occasions,

applied that general principle to hold owners and general contractors liable for violations of section 23-1.8(a). *See, e.g., Markey v. C.F.M.M. Owners Corp.*, 858 N.Y.S.2d 293, 297 (2d Dep't 2008) (owner and owner's lessee); *Cappiello*, 597 N.Y.S.2d at 394 (1st Dep't 1993) (owner and general contractor).

In sum, Pina has presented sufficient evidence to create a triable issue of fact as to whether use of a nail gun may endanger the eyes, such that eye protection was required under section 23-1.8(a). Should a jury answer that question in the affirmative, it would then consider whether Defendants failed to provide such protection and whether the lack of such protection was a proximate cause of Pina's injury.

**b. Section 23-9.2(a)**

Section 23-9.2(a) reads as follows:

> All power-operated equipment shall be maintained in good repair and in proper operating condition at all times. Sufficient inspections of adequate frequency shall be made of such equipment to insure such maintenance. Upon discovery, any structural defect or unsafe condition in such equipment shall be corrected by necessary repairs or replacement.

In *Misicki v. Caradonna*, 12 N.Y.3d 511 (2009), the New York Court of Appeals held that the first and second sentences of the regulation "are not specific enough to permit recovery under section 241(6) against a non supervising owner or general contractor." *Id.* at 520. With respect to the third sentence, however, it "reach[ed] the opposite conclusion." *Id.* Thus, a plaintiff who establishes that he was injured by a structural defect or unsafe condition in power equipment, and that "the claimed structural defect or unsafe condition [was] previously pointed out to his employer," has a claim under section 241(6). *Id.* at 521.

This is so even if the non-supervisory owner or general contractor was not aware of the defect or unsafe condition. *See id.* ("If [the employer's] negligence is established, [the owner] would be vicariously liable for plaintiff's injuries without regard to fault.").

Pina has offered evidence that his injury was caused by a defect in the nail gun that he had previously pointed out to Ulloa. As the Court of Appeals observed, however, the subpart that contains section 23-9.2(a) applies only to "power-operated heavy equipment or machinery." *Id.* at 518 (quoting 12 N.Y. Comp. Codes R. & Regs. § 23-9.1) (emphasis omitted). It assumed, without deciding, that the power tool at issue—a "handheld nine-inch electrically-driven angle grinder"—qualified. *Id.* at 519.

The Court's research has revealed no case addressing whether a nail gun is or is not "heavy equipment or machinery." The Court need not decide this apparent issue of first impression, however. As discussed below, the third regulation Pina proffers renders his claim under section 23-9.2(a) superfluous.

*c. Section 23-1.5(c)(3)*

Section 23-1.5(c)(3) of the Industrial Code requires that "[a]ll safety devices, safeguards and equipment in use shall be kept sound and operable, and shall be immediately repaired or restored or immediately removed from the job site if damaged." Only two reported cases cite this provision, with both holding that it is too general to create liability under section 241(6). *See Hassett v. Celtic Holdings, LLC*, 775 N.Y.S.2d 855 (1st Dep't 2004); *Williams v. White Haven Mem. Park, Inc.*, 643 N.Y.S.2d 787 (4th Dep't 1996). Those

cases are of limited value, however, because they predate *Misicki*.[3]

Although *Misicki* dealt with a different regulation, its reasoning applies with equal force to section 23-1.5(c)(3). Like section 23-9.2(a), section 23-1.5(c)(3) speaks of a general duty to maintain equipment, but then imposes a more concrete duty to repair or remove damaged equipment. Minor variations in language cannot obscure the fact that both regulations impose virtually identical duties, one with respect to "heavy equipment or machinery," the other with respect to "equipment in use."[4] Thus, applying *Misicki* by analogy, the Court holds that section 23-1.5(c)(3) is too general with respect to the duty to maintain equipment, but sufficiently concrete with respect to the duty to repair, replace or remove damaged equipment.

As noted, Pina has offered evidence that his injury was caused by a defect in the nail gun that he had previously pointed out to Ulloa. This is, *Misicki* instructs, sufficient to warrant trial of the claim, even though there is no evidence that the Savo brothers were aware of the defect. Thus, there are triable issues of fact as to whether the nail gun Pina was issued was damaged, whether Ulloa was aware of the damage and whether the damage was a proximate cause of Pina's injury.[5]

---

[3]*Hassett* further held that section 23-9.2(a) was too general to create liability, *see* 775 N.Y.S.2d at 855, and was, to that extent, expressly overruled by *Misicki*.

[4]"Heavy equipment or machinery" is a subset of "equipment," such that section 23-1.5(c)(3) seemingly subsumes section 23-9.2(a). Since Pina has alleged violations of both regulations, the Court has no occasion to consider whether cases exist where section 23-9.2(a) would apply, but 23-1.5(c)(3) would not.

[5]That Pina has presented two viable theories of liability under section 241(6) does not, of course, mean that he is entitled to recover twice for the same injury. The Court

13

**C. Exclusivity Provision**

Since Pina has offered sufficient support for his section 241(6) claims, the Court must address Dora's alternative argument that the claims are barred by the exclusivity provision of the New York Workers' Compensation Law. That provision reads as follows:

> The liability of an employer prescribed by [the Workers' Compensation Law] shall be exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise, on account of such injury or death or liability arising therefrom[.]

N.Y. Workers' Comp. L. § 11. Dora does not challenge the Workers' Compensation Board's determination that Ulloa's lack of insurance made Dora's carrier liable under section 56 of the Workers' Compensation Law. *See Begor v. Holmes*, 894 N.Y.S.2d 182, 185 (3d Dep't 2010) ("[Section 56] places liability on the contractor nearest in the chain to the uninsured employer in order to encourage contractors to employ only those subcontractors who have workers' compensation coverage, or face the financial risk themselves." (citation and internal quotation marks omitted)). Instead, it argues that the determination makes it Pino's *de facto* employer for purposes of the exclusivity provision.

A general contractor made the same argument in *Sweezey v. Arc Elec. Constr. Co.*, 295 N.Y. 306 (1946): "Defendant contends that since the general contractor here is obligated to pay compensation to the injured employee of the subcontractor, the latter

---

will make this clear to the jury in its instructions.

having failed to secure compensation insurance, the general contractor must be deemed to be an employer of the subcontractor's employees." *Id.* at 310. The Court of Appeals squarely rejected it:

> The liability of the contractor to employees of his subcontractor is a secondary one imposed upon him by law. That this does not cause the relationship of employer-employee to spring up has been recognized by this court . . . .
>
> In view of the established concept of a general contractor as a third party so far as his subcontractor's employee is concerned . . . , we do not feel that an intent to make the statutory liability imposed by section 56 exclusive can be read into that section.

*Id.* at 311-12. *Sweezey*—which was not cited in the parties' briefs—remains good law. *See, e.g., Joyce v. McKenna Assocs.*, 768 N.Y.S.2d 358, 359 (2d Dep't 2003) (citing *Sweezey* for the proposition that "the fact that [the general contractor] paid for the plaintiff's workers' compensation benefits pursuant to Workers' Compensation Law § 56 did not give rise to a new employment relationship between the plaintiff and itself").

### III

Defendants bear the burden of proof on their third-party claims for indemnification from Choray and Abad. As a result, their burden on summary judgment becomes much greater: They must "show that the evidence supporting [their] claims is so compelling that no reasonable jury could return a verdict for [Choray and Abad]." *SEC v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2007).

Defendants' theory on their indemnification claims against Choray and Abad is somewhat muddled, but it appears to have two premises: (1) the hold-harmless agreement ostensibly signed by Ulloa on behalf of Choray, and (2) the statements of the

15

Savo brothers that Choray was, in all respects save the name, the same company as Infinity. *See* Dep. of Ottavio Savo 49 ("Q. Was Choray working at the same time that Infinity [F]raming was working? A. It's the same guy."); Aff. of Leonello Savo ¶ 8 ("Eugenio Ulloa used [Infinity Framing and Choray] interchangeably as they had the same employees and performed the same type of work."). In either case, the evidence falls short of establishing Defendants' claim as a matter of law.

The hold-harmless agreement requires Choray to indemnify Defendants for the acts and omissions of its employees, but Pina has averred that he worked only for Infinity. That evidence refutes the conclusion, at least for purposes of summary judgment, that Ulloa was acting on behalf of Choray in supervising Pina's work. There is, moreover, no compelling evidence that Ulloa had authority to bind Choray. A jury might reasonably dismiss the Savo brothers' belief that he did as lacking any foundation or, less charitably, self-serving.[6]

Defendants' insistence that Choray and Infinity were "interchangeable" suggests that they seek indemnification from Choray as an alter ego of Infinity. But even if Ulloa dominated both Infinity and Choray, that alone would be insufficient to make one company liable for the obligations of the other. "Closely associated corporations, even ones that share directors and officers, will not be considered alter egos of each other if they were formed for different purposes, neither is a subsidiary of the other, their finances are not

---

[6]As noted, Infinity has defaulted on the defendant's claim for indemnification based on an analogous hold-harmless agreement. The defendants will presumably obtain a default judgment for indemnification from Infinity should Pina obtain a judgment against them.

16

integrated, assets are not commingled, and the principals treat the two entities as separate and distinct." *Longshore v. Paul Davis Sys.*, 759 N.Y.S.2d 204, 206 (3d Dep't 2003).  There is evidence that each company had a different purpose on the project, and a complete absence of evidence regarding their assets and finances.  Thus, Defendants have not conclusively established that Choray is liable as an alter ego of Infinity.  Finally, there is no evidence, compelling or otherwise, to establish that Abad is personally liable for the obligations of Choray.

Thus, Defendants' claims against Choray and Abad will proceed to trial as to whether Pina's employer was Choray, rather than Infinity, or alternatively, whether Choray is liable as Infinity's alter ego.  The Court expresses no view as to whether the evidence adduced at trial will be sufficient to warrant submitting those questions to a jury.

## IV

The defendants' motion for summary judgment is granted as to Pina's section 200 claims, but otherwise denied.  Accordingly, Pina's section 241(6) claims and the defendants' third-party claims for indemnification from Choray and Abad shall proceed to trial.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 29, 2013